IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERESA MARTIN and PETE MASON, on behalf of themselves individually and as the Parents and Guardians of PIERRE MASON and PARIS MASON, minors, | ) ) ) ) ) | No.09 C 1903 |
| Plaintiff(s), | ) ) | Judge Manning |
| vs. | ) ) | Magistrate Judge Cox |
| CITY OF CHICAGO, JAMES OBALDO, (Star #12267), STEFAN SZUBSKI, (Star #4443), BELINDA BERNAL (Star #12254), and MICHAEL CARROLL (Star #14575), and other as yet UNKNOWN CHICAGO POLICE OFFICERS, | ) ) ) ) ) ) ) ) | |
| Defendant(s). | ) | |

**DEFENDANTS' MOTION FOR ENTRY OF PROTECTIVE ORDER
TO PREVENT PLAINTIFFS' ATTENDANCE AT DEPOSITION**

Defendant City of Chicago (the "City") and Chicago police officers James Obaldo, Stefan Szubski, Belinda Bernal, and Michael Carroll (collectively "Defendant Officers"), through one of their attorneys, Bhairav Radia, Assistant Corporation Counsel for the City of Chicago, move this Court, pursuant to F.R.C.P. 26(c), for a protective order to prevent Plaintiffs from attending the deposition of the Defendant Officers unless they first participate in a photo array. In support of their motion, Defendants state as follows:

**SUMMARY OF MOTION**

There is a very real question in this case as to whether Plaintiffs have identified the correct police officers who they claim violated their rights. Plaintiffs have provided almost no physical descriptions, except that all the officers were white and male, except for one female, and

1

one of the officers was of medium build. Moreover, to date, there is no formal documentation to confirm any contact between Plaintiffs and any Chicago police officer on the date of the alleged incident. Defendants have a significant interest in being certain Plaintiff has not sued them in error. Defendants are concerned that the highly suggestive venue of a deposition will convince Plaintiffs to believe the Defendant Officers being deposed are the correct officers, without ever having had to test their identification. Defendants seek entry of a protective order preventing Plaintiffs from attending depositions of Defendant Officers unless Plaintiffs first participate in a photo array.

## FACTUAL BACKGROUND

In their Second Amended Complaint ("Complaint"), Plaintiffs bring claims under §1983 for excessive force, failure to intervene, illegal search, and under state law for battery. Plaintiffs contend that at about 11:30 p.m. on December 13, 2008, Plaintiffs Pierre and Paris Mason were walking down the street near their home when shots were fired by an unknown person. Pierre and Paris began to run. Defendant Officers, along with other unknown Chicago police officers, commanded Pierre and Paris to put their hands up. Defendant Officers, along with other unknown Chicago police officers, then subjected both Pierre and Paris to excessive force by striking Pierre several times and slamming Paris to the ground. Pierre's and Paris's father, Plaintiff Pete Mason, saw Defendant Officers or other unknown officers attack his sons and asked the officers why they were beating his sons. Defendant Officers or other unknown officers beat Pete, and about four police officers unlawfully searched and ransacked Plaintiffs' home. Defendant Officers have denied all these allegations.

Plaintiffs were not formally arrested and, to date, there has been no documentation found

to verify whether there was any encounter between Plaintiffs and any Chicago police officer. Accordingly, there has been no confirmation that the named Defendant Officers are in fact the officers who Plaintiffs claim unlawfully caused their physical injury. Thus, the officers' identity remains an issue for trial.

The identities of the officers have not been verified, thus far, through written discovery. Plaintiffs have been asked to provide detailed descriptions of the officers with whom he had this alleged encounter. Plaintiffs filed a formal complaint with the Chicago Police Department ("CPD") shortly after the alleged incident took place, complaining about the alleged misconduct of the police officers . The CPD's Independent Police Review Authority ("IPRA") is still investigating Plaintiffs' complaint under Complaint Register No. 1022442. Plaintiffs provided signed statements to an investigator at IPRA, copies of which have been provided by Plaintiffs to Defendants during discovery. In these statements, Plaintiffs say they are unable to provide any names, star numbers, or physical descriptions of the officers who allegedly violated their rights on December 13, 2008, except that the officers were all white, one was of medium build (no further physical description), and one was female. Neither of these descriptions are sufficiently specific to assist in substantiating the identity of the officers.

Defendant Officers have been named as defendants in this case on the basis of event queries and unit queries from the CPD and Office of Emergency Management and Communications ("OEMC") that place them, along with other police officers, in the vicinity of Plaintiffs' home on the night of December 13, 2010. These documents do not confirm that these officers actually encountered Plaintiffs or entered their home that night. *See* OEMC Unit and Event queries, attached as Exhibit A.

The Defendant Officers' depositions were noticed for January 25, 26, 29 and February 2, 2010. Plaintiffs' depositions have been noticed for January 28, and February 4, 5, and 11, 2010. Plaintiffs initially agreed to Defendants' proposal to attend a photo array of Chicago police officers at the CPD's Internal Affairs Department, and the parties' reached agreement on the parameters of the photo array. The parties had set today, January 21, 2010, as the tentative date for the photo array. However, despite diligent efforts, Defendants could not arrange for the photo array to take place on that date, because of scheduling issues at the Internal Affairs Department. Defendants will be able to provide Plaintiffs, by the end of next week, with a firm date for the photo array. Due to the obvious questions raised about whether Defendant Officers are the right officers, and to comply with Local Rule 37.2, Defendants' counsel asked Plaintiff's counsel if Plaintiffs intended to attend the deposition, and if so, would they agree to reschedule Defendant Officers' depositions until after Plaintiffs have viewed a photo array. Alternatively, Defendants' counsel proposed that Defendant Officers' deposition go forward as planned, on the dates noted above, if Plaintiffs agree not to attend the depositions. Plaintiffs' counsel informed Defendants' counsel that Plaintiffs would be attending the deposition, and she would not agree to Defendants's request that Plaintiffs participate in a photo array first. Nor would Plaintiffs agree not to attend the Defendant Officers' depositions until first viewing a photo array. Defendants' counsel also offered to reschedule Plaintiffs' depositions so that they would be deposed after the photo array and after Defendant Officers' depositions, to allay Plaintiffs' potential concerns about changing the current sequence or order of depositions. Plaintiffs' counsel disagreed with this proposal, too. Because the parties could not agree on a compromise, Defendants were forced to cancel two of the depositions scheduled on December 25 and 26, 2010, and file this motion

seeking a protective order to require Plaintiffs to participate in a photo array before attending Defendant Officers' depositions, or to bar them from attending Defendant Officers' depositions.

**ARGUMENT**

Defendants have significant concerns about Plaintiffs attending the Defendant Officers' depositions and being convinced they are the correct officers simply because they are being deposed. Because Plaintiffs' description of the involved officers is vague, the risk of misidentification is high should Plaintiffs observe the officers at their depositions. Because the officers' identity is an issue for trial, a subsequent identification at trial will be unfairly tainted should Plaintiffs be allowed to attend the depositions. Effectively, this would eclipse the officers' ability to contest identification at trial. Moreover, the tenuous manner in which Defendants have been connected to this incident through only event queries further strengthens this request for a protective order to require Plaintiffs to affirmatively identify the officers they believes abused them through a photo array. Under the circumstances, Defendant Officers are entitled to some protection from misidentification prior to being deposed.

Rule 26(c) provides that, for good cause shown, the court may make any order that justice requires on any matter relating to a deposition. Fed.R.Civ.P. 26(c). The orders can require that "the disclosure of discovery may be had only on specific terms and conditions. . .that certain matters may not be inquired into. . .the discovery be conducted with no one present except persons designated by the court." Id. at (2), (4) and (5). Even parties may be excluded upon a showing of good cause. See Milsen Co. v. Southland Corp., 16 Fed.R.Serv.2d 110 (N.D. Ill. 1972). Because Defendants have shown good cause, the protective order sought by Defendants should be granted.

Clearly, identification of the officers is an issue in this case. Plaintiff has provided a very limited description of the involved officers. Moreover, allowing Plaintiffs to sit through these depositions would be highly suggestive. The risk is too great that Plaintiffs would be influenced by the presence of the officers at their depositions, convincing the Plaintiffs into believing the officers were involved, when they may not be. Consequently, Plaintiffs' presence at the depositions would be too prejudicial unless Plaintiffs first attempt to independently identify the officers. Otherwise, there is no assurance Plaintiff would not identify them just because they are the officers produced for deposition. This would be akin to a "line up of one." Consequently, good cause exists for entry of this protective order.

Recently, in Hadnott v. City of Chicago, 07 C 6754, Magistrate Judge Schenkier recognized the unfair prejudice likely to result from permitting plaintiffs to attend depositions when the defendants' identity was uncertain because there was no formal arrest or other documentation to support the encounter. In Hadnott, Judge Schenkier excluded plaintiff from attending the defendants' depositions, noting "I don't want them to presume the [defendant] is the person because they see him at a deposition." See Transcript of Proceedings dated August 12, 2008, at p. 13, l: 10-14, relevant portions attached hereto as Exhibit B.

Judge Schenkier recognized this would effectively amount to an unfair "show up" and so to balance the risks and rights of both sides, he fashioned the compromise suggested here: view a photo array or forego attending the defendants' depositions. Id. at p. 16, l. 11-21:; p. 17, l:11-15. See also Order, attached hereto as Exhibit C. In ruling on objections to Magistrate Shenkier's orders in Hadnott, Judge Coar acknowledged that defendants had a legitimate concern "that a plaintiff's observation of a defendant at a deposition – a highly suggestive context – will taint

6

the plaintiff's subsequent identification of defendant in court." Hadnott v. City of Chicago, No. 07 C 6754, Memorandum Opinion and Order at p. 2 (Dkt.Entry at # 145).

The Seventh Circuit has noted: "A motion under Rule 26(c) to limit discovery requires the District Court Judge to compare the hardship to the party against whom discovery is sought, if the discovery is allowed, with the hardship to the party seeking discovery if discovery is denied. He must consider the nature of the hardship as well as it magnitude." Marrese v. American Academy of Orthopedic Surgeons, 726 F.2d 1150, 1159 (7th Cir. 1984)(en banc) rev'd on other grounds, 470 U.S. 373 (1985).

Here, if Plaintiffs are allowed to attend Defendants' depositions, the officers would never be able to overcome the "hardship" of a misidentification. However, there is no discernable hardship to the Plaintiffs if they are not present for the depositions (they can read the transcript) or if they are first required to view a photo array prior to attending the depositions. Consequently, this protective order should be granted, as it best balances the interest of both parties.

## CONCLUSION

At this stage of the litigation, all parties and the court have an interest in making certain the correct defendants are joined in this case. This interest is best served by requiring Plaintiffs to view a photo array or to preclude his attendance at the Defendant Officers' depositions.

WHEREFORE, Defendants respectfully request this Court enter a protective order pursuant to Fed.R.Civ.P. 26(c) to prohibit Plaintiffs from attending the depositions of the Defendant Officers and to prohibit Plaintiffs' counsel from taking photographs or video taping the officers and further that Plaintiffs' counsel be prohibited from asking for detailed physical descriptions of the officers at the depositions, unless Plaintiffs first view an appropriate photo array to determine if they can identify the officers who violated their rights as alleged in their Second Amended Complaint; Defendants request all other and further relief that this court deems appropriate.

Respectfully submitted,

__s/ Bhairav Radia_____
Bhairav Radia
Assistant Corporation Counsel
Attorney for Defendants

30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-5106
Atty. No. 06293600

January 21, 2010