IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERESA MARTIN and PETE MASON, on behalf of themselves and as the parents and guardians of PIERRE MASON and PARIS MASON, minors, | ) ) ) ) ) ) | |
| | ) | No. 09 C 1903 |
| Plaintiff, | ) ) | |
| v. | ) ) | District Judge Blanche M. Manning |
| CITY OF CHICAGO, JAMES OBALDO (Star # 12267), STEFAN SZUBSKI (Star # 4443), BELINDA BERNAL (Star # 12254), MICHAEL CARROLL (Star # 14575), and other as yet UNKNOWN CHICAGO POLICE OFFICERS, | ) ) ) ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs, Teresa Martin, Pete Mason, and their twin sons, Pierre Mason and Paris Mason, have brought suit against the City of Chicago, four named Chicago police officers, and other unknown Chicago police officers. Plaintiffs allege that certain officers, in the course of their duty, used excessive force, illegally searched the plaintiffs' home, and battered plaintiffs. Before the Court is plaintiffs' motion to amend their complaint to add four additional Chicago police officers. Defendants partially oppose this motion, arguing that insufficient evidence supports adding two of the officers and that plaintiffs are time barred from bringing state law battery claims against all four additional officers. For the following reasons, plaintiffs' motion is granted [dkt. 77].

**Background**

Plaintiffs allege that on December 13, 2008 at approximately 11:30 p.m., the two fourteen year-old twin brothers, Pierre and Paris, were walking home from a party.[1] On their way home, they saw a large group of individuals circled around what appeared to be a fight.[2] The twins then heard gun shots and immediately both ran back home.[3] At some point, police officers pursued Pierre and Paris, and by the time the two were in front of their home, the officers ordered that they put their hands up.[4] The complaint alleges that the officers then struck Pierre several times and threw Paris to the ground.[5] Upon seeing this, their father, Pete, came out of the home.[6] Pete was then allegedly handcuffed, thrown face first into the ground, and hit over the head with an unknown object.[7] Plaintiffs next claim that the officers unlawfully searched plaintiffs' home before releasing them.[8]

**Discussion**

Plaintiffs filed a five count complaint against the City of Chicago, Officers James Obaldo, Stefan Szubski, Belinda Bernal, and Michael Carroll, and unknown Chicago police officers.[9] Three counts arise under 42 U.S.C. § 1983: (1) excessive force; (2) failure to intervene; and (3) illegal search. Plaintiffs also bring two state law claims: (4) common law battery and (5) a *respondeat superior* claim brought under the Local Governmental and Governmental Employees Tort Immunity

---

[1] Second Am. Compl. ¶ 6.
[2] Pl's Reply at 1.
[3] Second Am. Compl. ¶¶ 6, 7.
[4] *Id.* at ¶¶ 8, 9.
[5] *Id.* at ¶¶ 10, 11.
[6] *Id.* at ¶ 12.
[7] *Id.* at ¶¶ 13-15.
[8] *Id.* at ¶¶ 16,17.
[9] Dkt. 32.

Act.[10] Plaintiffs claim that discovery has revealed the identities of four additional officers that were present and participated in the alleged misconduct against plaintiffs: Officers Gerardo Quintero, William Langle, Peter Edwards, and Joseph White. Plaintiffs point to Chicago Police Department Event Query documents produced during discovery, which indicate that all four officers responded to a radio call for shots fired near the plaintiffs' home. Plaintiffs have also now had the opportunity to depose these officers, and they believe that there is adequate information linking the officers to the plaintiffs' injuries.

Under Federal Rule of Civil Procedure 15, the Court should freely give leave to amend a pleading.[11] However, leave will be denied where the amendment would be futile.[12] When, as here, neither party has moved for summary judgment, an amendment will be deemed futile if it would not withstand a motion to dismiss.[13] Generally, to withstand a motion to dismiss, there must be "enough facts to state a claim to relief that is plausible on its face."[14]

First, defendants argue that there is no evidentiary basis to add Officers Edwards and White. It appears that the only reason defendants oppose the addition of these two officers, and not Officers Quintero or Langle, is because Office of Emergency Management and Communications ("OEMC") records show Officers Edwards and White one block away from plaintiffs' home on the night of the incident.[15] (It is not clear what records or information link Officers Quintero or Langle to the alleged incident. But because defendants do not oppose the motion to amend as to those officers, we

---

[10]745 Ill. Comp. Stat 10/9-102.
[11]Fed. R. Civ. P. 15(a)(2).
[12]*Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).
[13]*Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 974-75 (7th Cir. 2001)(citing *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir.1992)); *see also Connetics Corp. v. Pentech Pharmaceuticals, Inc..* ,No. 07 C 6297 ,2009 WL 1089552 at *2 n. 1 (N.D. Ill. Apr. 16, 2009)(stating "[b]ut where, as here, neither party has moved for summary judgment, the applicable standard is whether the amendment can withstand a motion to dismiss").
[14]*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).
[15]Defs' Resp., OEMC records, Exh. A.

need not address that issue.). The OEMC records indicate that at 11:57 p.m on December 13, 2008, Officers Edwards and White responded to a call for shots fired and reported being at the address of 7244 S. Sangamon, which is one block from Plaintiffs' home. Plaintiffs, however, argue that these records, along with deposition testimony, show that Officers Edwards and White were responding to the same underlying incident - the report of shots fired - that resulted in the police officers approaching the twins outside their home. Furthermore, plaintiffs assert that a record stating that these officers were one block away is not conclusive that the officers were, in fact, one block away, or that they, perhaps, did not change their location a moment later.

We agree. To determine whether these officers were present during the alleged misconduct, and whether they even participated in the alleged claims, is not the purpose of this motion. In other words, one OEMC record indicating that these officers were one block away at a time close to when the alleged unlawful conduct occurred is not dispositive as to the officers' involvement. The Court, therefore, grants the motion as to Officers Edwards and White.

Second, defendants contend, in a single paragraph, that the state law battery claim against the four new officers is time barred. Plaintiffs, however, argue that the statute of limitations should be tolled (and defendants make no argument regarding tolling). The statute of limitations for civil actions brought against local entities or its employees is limited to one year from the date the injury is received.[16] However, under Illinois law, equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time."[17] Similarly, equitable tolling permits a plaintiff to bring an action after the statutory period, if he or she has exercised reasonable diligence

---

[16] 745 Ill. Comp. Stat. 10/8-101.
[17] *Shropshear,* 275 F.3d at 595.

in attempting to discover "vital information bearing on the existence of his claim."[18] An example of equitable tolling is "when a plaintiff has 'been injured and known he was injured, at which point the statute of limitations began to run, yet have been unable despite all reasonable diligence to learn ... the wrongdoer's identity.'"[19] Courts also state that the plaintiff must be "prevented from asserting his or her rights in some extraordinary way."[20] Both of these doctrines "must be applied with caution."[21]

We note that in *Fidelity National Title Insurance Company of New York v. Howard Savings Bank,* the Seventh Circuit placed some doubt around whether Illinois recognizes the doctrine of equitable tolling because of apparent disparate formulations of equitable tolling in the Illinois case law.[22] In that opinion, however, Judge Posner stated equitable tolling is a "common place" doctrine and "venture[d] the guess that [Illinois] does" accept the doctrine.[23] Furthermore, "[w]hat is important is simply that once the limitations period has expired, any further extension is limited to the time necessary to find such additional information as the plaintiff absolutely needs in order to be able to file a suit."[24]

Here, the alleged battery occurred on December 13, 2008, approximately 18 months ago. Therefore, it exceeds the one-year time limit in the statute.[25] However, plaintiffs argue that equitable tolling and estoppel are permitted because defendants cancelled depositions on multiple occasions.

---

[18]*Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001).
[19]*Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 562 (7th Cir. 1996)(quoting *Singletary v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.*, 9 F.3d 1236 (7th Cir.1993)).
[20]*Clay v. Kuhl,* 189 Ill.2d 603, 614 (Ill. 2000).
[21]*Block v. Pepper Const. Co.*, 304 Ill.App.3d 809, 817 (Ill. App. Ct. 1999).
[22]436 F.3d 836, 839 (7th Cir. 2006)(stating, "[n]ow admittedly it is still unresolved whether Illinois recognizes equitable tolling).
[23]*Fidelity Nat. Title Ins. Co. of N. Y*, 436 F.3d at 839.
[24]*Id. (citing Unterreiner v. Volkswagen of America, Inc*., 8 F.3d 1206, 1213 (7th Cir.1993); *see also Cada v. Baxter Healthcare Corp*., 920 F.2d 446, 453 (7th Cir.1990)).
[25]*See* 745 Ill. Comp. Stat. 10/8-101.

Plaintiffs also argue that they have been diligently attempting to discover the identities of the officers. Approximately an hour following the incident, plaintiffs state that they dialed 9-1-1 to report the officers' alleged abuse of the plaintiffs. Plaintiffs also represent that they provided statements to the Independent Police Review Authority ("IPRA") one month following the incident in an effort to expedite the investigation. Furthermore, plaintiffs contend that defendants did not respond to plaintiffs' first set of written discovery until January 8, 2010. Plaintiffs also complain that they requested dispatch records and attendance sheets from defendants and that defendants provided some of these documents on May 22, 2009, but did not provide the remaining documents until "much, much later."[26]

We acknowledge that, in fact, plaintiffs have had difficulty scheduling depositions with several Chicago police officers. On December 21, 2009, plaintiffs brought this to the Court's attention at a status hearing and, on March 24, 2010, were forced to file a motion to compel depositions of the very officers they now seek to add.[27] A principle issue in discovery has also been defendants' reluctance to turnover Complaint Register ("CR") and IPRA files.[28] But none of these discovery issues were brought to the Court's attention until after the limitation period had expired (which would have been December 13, 2009).[29] Furthermore, although plaintiffs did not receive written discovery responses until January 8, 2010, plaintiffs do not state when they made these written discovery requests. And the claim that plaintiffs received the remaining dispatch records and attendance sheets "much, much later," also does not advance plaintiffs' position. With this kind of claim, we are unable to determine when exactly the documents were received, and to what extent

---

[26]Pl's Reply at 7.
[27]Dkts. 44, 59.
[28]Dkts. 53, 58, 61, 66, 68.
[29]Dkts. 44, 53, 58, 59, 61, 66, 68.

the delay affected plaintiffs' ability to discover the identities of the additional officers. The Court cannot find, therefore, that defendants are responsible for preventing plaintiffs from discovering the identities of these officers, making equitable estoppel inappropriate in this case.

There is, nonetheless, evidence that plaintiffs have been diligent in attempting to discover the identities of the officers. Immediately following the incident, plaintiffs dialed 9-1-1. They also cooperated with IPRA officials one month later and filed their initial complaint only three months after the incident, at which time plaintiffs did not know the identities of any of the officers.[30] This set of facts does not resemble the cases in our district where tolling was denied, such as where the plaintiff waited until there were only two or three months prior the expiration of the statute of limitations to file a complaint,[31] or where a plaintiff waited several months to investigate the names of potential defendants despite a warning from the court about the limitations period.[32] Here, plaintiffs diligently contacted and cooperated with the local authorities in an attempt to discover the officers' names and expeditiously filed suit. Equitable tolling is, therefore, appropriate. Plaintiffs are permitted to amend their complaint and add the state law battery claim as to all defendants. Plaintiffs' motion is, thus, granted [dkt. 77].

**IT IS SO ORDERED**.

**ENTERED: July 16, 2010**

 SUSAN E. COX
 United States Magistrate Judge

---

[30] Dkt. 1.
[31] *Tate v. McCann*, No. 08 C5664, 2010 WL 2557744, at *7 (N.D.Ill. Jun. 21, 2010); *see also Aleman v. Dart*, No. 08 C 6322, 2010 WL 502755, at *4 (N.D.Ill. Feb. 9, 2010).
[32] *Sokoya v. Schragel*, No. 07 C 137, 2010 WL 2166999, at *5 (N.D.Ill. May 27, 2010).