## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TERESA MARTIN and PETE MASON, on behalf of themselves individually and as the Parents and Guardians of PIERRE MASON and PARIS MASON, minors, | 09-1903 |
| Plaintiffs, | Judge Manning |
| v. | Magistrate Cox |
| CITY OF CHICAGO, JAMES OBALDO (Star # 12267), STEFAN SZUBSKI (Star # 4443), BELINDA BERNAL (Star # 12254), MICHAEL CARROLL (Star # 14575), GERARDO QUINTERO (Star # 5796), WILLIAM LANGLE (Star # 15098), PETER EDWARDS (Star # 5954) JOSEPH WHITE (Star # 14338), and other as yet UNKNOWN CHICAGO POLICE OFFICERS, | |
| Defendants. | **JURY TRIAL DEMANDED** |

### THIRD AMENDED COMPLAINT

NOW COME Plaintiffs, Teresa Martin and Pete Mason, on behalf of themselves individually and as the Parents and Guardians of Pierre Mason and Paris Mason, minors, through their attorneys Smith, Johnson & Antholt, LLC, and complaining of Defendants, CITY OF CHICAGO, JAMES OBALDO, (Star # 12267), STEFAN SZUBSKI (Star # 4443), BELINDA BERNAL (Star # 12254), MICHAEL CARROLL (Star # 14575), GERARDO QUINTERO(Star # 5796), WILLIAM LANGLE(Star # 15098), PETER EDWARDS(Star # 5954), and JOSEPH WHITE(Star # 14338), state as follows:

### Introduction

1. This action, arising out of the police brutality and illegal search of Plaintiffs' home is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.



## Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## The Parties

3. Plaintiffs, Teresa Martin and Pete Mason, are the Parents and Guardians of Pierre Mason and Paris Mason who are twin fourteen-year-old brothers. The family resides in Chicago, Illinois.

4. The individual Chicago police officers, collectively the "Defendant Officers," were Chicago Police Officers at the time of this occurrence. They engaged in the conduct complained of while on duty in the course and scope of their employment and under color of law. They are sued in their individual capacities. The Defendant Officers include James Obaldo (Star # 12267), Michael Carroll (Star # 14575), Stefan Szubski (Star # 4443), and Belinda Bernal (Star # 12254) Gerardo Quintero, (Star # 5796), William Langle (Star # 15098), Peter Edwards (Star # 5954), and Joseph White (Star # 14338).

5. Defendant City of Chicago ("City") is a municipal corporation duly incorporated under the laws of the State of Illinois, which operates the Chicago Police Department.

## Background

6. On December 13, 2008, at approximately 11:30 p.m., Pierre and Paris Mason were walking down the street towards their home on the 7200 block of South Morgan when shots were fired nearby by an unknown person.

7. Pierre and Paris, along with other innocent bystanders, began to run.

2

8. Police cars containing the Defendant Officers approached the brothers.

9. Defendant Officers commanded Pierre and Paris to put their hands up.

10. Pierre was struck several times and handcuffed by one of the Defendant Officers without lawful justification.

11. One or more of the Defendant Officers slammed Paris to the ground and then handcuffed him without lawful justification.

12. When Pierre and Paris were being attacked, Plaintiff Pete Mason, their father, came out of the family's home.

13. When Mr. Mason asked the Defendant Officers why they were beating his sons, one or more of the Defendant Officers handcuffed Mr. Mason and threw him face first into the ground.

14. One or more of the Defendant Officers Defendant Officers beat Mr. Mason, while he was on the ground, handcuffed, and not posing any threat to anyone.

15. One or more of the Defendant Officers Defendant Officers hit Mr. Mason in the head with an unknown object.

16. After the beatings, approximately four Defendant Officers searched the home where all Plaintiffs lived, ransacking it in the process.

17. After their warrantless search, Defendant Officers released Plaintiffs.

### The City's Responsibility

18. The City of Chicago maintains a de facto policy, practice and custom of failing to properly train, supervise, discipline and control its officers, which was the moving force behind the use of excessive force against Pierre, Paris and Pete Mason.

19. Municipal policymakers have long been aware of the City's policy and practice of failing to properly train, monitor and discipline its police officers.

20. In 1999, following two high profile incidents of excessive force, the City Council held public hearings on the prevalence of excessive force, as well as the failure of the Department's disciplinary system. At those hearings, members of the Council assured the public that changes would be made to the Chicago Police Department policies and practices to address these issues.

21. On September 28, 1999, the then-Superintendent of police gave a speech highlighting problems with the City of Chicago's policies and practices relating to the use of force. Superintendent Hillard spoke specifically of the need for (1) better in-service training on the use of force; (2) early detection of potential problem officers; (3) an effective disciplinary system, and (4) officer accountability for the use of force.

22. In a review commissioned by the Superintendent, John Marshall Law School found that although the City of Chicago's written policy on the use of force was in compliance with the law, but that more training of police officers was necessary for the written policy to be effective in practice.

23. A few months later, in January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

24. A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

25. Two years later, a federal jury in the case of *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's investigations of excessive

4

force allegations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and fostered a culture of impunity within the Chicago Police Department. The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off duty Chicago police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. *Id.* at *1.

26. Responding to highly publicized events of excessive force by Chicago police officers in the summer of 2008, Police Superintendent Weiss admitted that there had been "an atmosphere" within the Department in which officers felt they were "above the law."

27. Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address that failure. Redress that was specifically promised by the City Council and the Superintendent has gone unfilled.

28. For example, the City's training program has not changed since 1999, despite repeated promises by the City for a more comprehensive training program. As a result, officers on the streets of Chicago are ill-equipped to make the necessary decisions on the use of force. Further, this lack of training greatly increases of the susceptibility of officers to improper and violent abuses of their police power through the unjustified use of force, such as that at issue in this case.

29. Similarly, the City has failed to institute any system for recognizing problem officers or to ensure an effective disciplinary system.

30. As a result of the City's policies, practices and customs, its officers are emboldened to use unlawful force by their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

5

31. At the time that the Defendant Officers used excessive force and illegally searched Plaintiffs' home, they knew that the City would not subject them to any meaningful investigation, discipline or criminal prosecution. Their misconduct in this case was a direct result of the City's unconstitutional policies, practices and customs.

### Count I – 42 U.S.C. § 1983
### Fourth Amendment – Excessive Force

32. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

33. As described in the preceding paragraphs, the conduct of the Defendant Officers, acting under color of law, constituted excessive force in violation of the United States Constitution.

34. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

35. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

36. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

    b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs; specifically, Chicago police officers accused of excessive force can be confident that the

Department will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in excessive force;

      c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

      d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

      e. As a matter of express policy, the City of Chicago does not retain any records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

      f. Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers; and

37. As a result of the Defendant Officers' unjustified and excessive use of force, as well as the City of Chicago's policy and practice, Plaintiffs have suffered injury and emotional distress.

### Count II – 42 U.S.C. § 1983
### Failure to Intervene

38. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

39. During the physical abuse of Plaintiffs, as described more fully above, one or more of the Defendant Officers stood by and watched without intervening to prevent the violence to which Plaintiffs were subjected.

7

40. These officers had a reasonable opportunity to prevent the harm had they been so inclined, but failed to do so.

41. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in preceding paragraphs.

42. As a result of the failure of these Defendant Officers to intervene to prevent the unjustified and excessive use of force, Plaintiffs Pierre, Paris and Pete Mason suffered pain and injury, as well as emotional distress.

## COUNT III – 42 U.S.C. § 1983
### Fourth Amendment—Illegal Search

44. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

45. The search of the Plaintiffs' home as detailed above was performed without a warrant or any other legal justification,

46. The search was performed willfully and wantonly by the Defendant Officers, in violation of Plaintiffs' right to be free of unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

47. As a result of the Defendant Officers' actions, Pierre, Paris, and Pete Mason suffered pain and injury, as well as emotional distress.

## Count IV – State Law Claim
### Battery

48. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

49. As described more fully in the preceding paragraphs, the actions of the Defendant Officers constituted offensive physical contact made without the consent of Plaintiffs Pierre, Paris and Pete Mason.

50. The Defendant Officers' actions were undertaken intentionally, willfully and wantonly or were willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

51. By the actions detailed above, Defendant Officers intentionally made offensive bodily contact against Pierre, Paris and Pete Mason and Defendants inflicted bodily harm to Plaintiffs.

52. As a result of the Defendant Officers' actions, Pierre, Paris, and Pete Mason suffered pain and injury, as well as emotional distress.

## Count V – State Law Claim
## 745 ILCS 10/9-102

53. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

54. Defendant City of Chicago is the employer of all of the Defendant Officers.

55. The Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants, and other unknown Chicago Police Officers, jointly and severally, for compensatory damages and, because the Defendant Officers acted maliciously, wantonly, or oppressively, Plaintiffs seek punitive damages against the individual Defendant Officers in the individual capacities, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Jennifer Hartung Marsch
One of Plaintiffs' Attorneys

Smith, Johnson & Antholt, LLC
112 S. Sangamon Street, 3rd Floor
Chicago, IL 60607
(312) 432-0400

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she served a copy of this Certificate of Service and accompanying Plaintiffs' Third Amended Complaint on counsel for all Defendants by electronic means on June 4, 2010.

Respectfully submitted,

/s/ Jennifer Hartung Marsch
Attorney for Plaintiffs

Smith, Johnson & Antholt LLC
112 S. Sangamon St., 3rd Floor
Chicago, IL 60607
312.432.0400