**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERESA MARTIN and PETE MASON, on behalf of themselves individually and as the Parents and Guardians of PIERRE MASON and PARIS MASON, minors, | ) | No. 09 C 1903 |
| Plaintiffs, | ) | Judge Sharon Johnson Coleman |
| v. | ) | Magistrate Susan E. Cox |
| CITY OF CHICAGO, JAMES OBALDO (Star # 12267), STEFAN SZUBSKI (Star # 4443), BELINDA BERNAL (Star # 12254), MICHAEL CARROLL (Star # 14575), GERARDO QUINTERO (Star # 5796), WILLIAM LANGLE (Star # 15098), PETER EDWARDS (Star # 5954) JOSEPH WHITE (Star # 14338), and other as yet UNKNOWN CHICAGO POLICE OFFICERS, | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

NOW COME Plaintiffs, TERESA MARTIN and PETE MASON and their minor children PIERRE and PARIS MASON, by and through their attorneys, responding to Defendants' motion for summary judgment as follows:

## INTRODUCTION

In their motion for summary judgment, Defendants ignore the fact that they have been caught red handed as participants in the complained events of December 13, 2008. Despite their too convenient claims of ignorance, Defendants' own records demonstrate their involvement or acquiescence in the beatings of Paris and Pierre Mason. At around midnight, Defendants chased the twin fourteen-year-old boys to their home at 7250 S. Morgan. In front of their home, without

any legal justification, Defendants seized the boys and beat them. Pete Mason, the boys' father came outside to see what was happening, only to be grabbed and struck by Defendants. Compounding their misconduct, Defendants then illegally searched the Mason home.

No one in the Mason family had committed any crime. There was no justification for their beatings and there was no warrant for Defendants' search of their home. Defendants knew this. Rather than complete contact cards as required by the Department, the officers chose to hide from their brutality and sloppy police work through silence. No officer was willing to fill out any report that would create a paper trail connecting them to Paris, Pierre, Pete Mason or the search of the family's home. Now Defendants ask this court reward their silence, to credit their cover-up, and to pretend that the events of December 13, 2008 did not happen. They would further exploit their victims, just boys, by requiring them to have a photographic memory of what occurred in the dark of night. This is not required. An officer is liable for excessive force committed by another officer if he had the opportunity and ability to prevent the harm regardless of whether he had direct involvement. *See Byrd v. Briske,* 466 F.2d 6, 11 (7th Cir. 1972); *Jones* v. *City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988).

## I. FACTUAL BACKGROUND

On December 13, 2008, twin fourteen-year-old brothers, Pierre and Paris Mason, were on their way home when they saw a crowd of about twenty people arguing and fighting on Morgan Street between 71st and May Streets. (Plaintiffs' Local Rule 56.1(b)(3)(B) Stmt. of Add'l Facts ("LR Stmt.") ¶¶ 1-2.) When the boys heard gunfire they – like others in the area – ran. (*Id.* ¶6.)

At the same time, while the boys were walking home, at 11:52:39 p.m., a police dispatch reported a battery in progress at 7155 S. Sangamon. (*Id.* ¶4.) A second dispatch went out that shots were fired east May and 71st Street at 11:54:23. (*Id.* ¶5.) Defendant Officers Carroll and

Obaldo responded to the call and headed to the location. (*Id.* ¶10.) Moments later, at 11:55:41 p.m., Obaldo and Carroll were chasing two males wearing black jackets with red writing heading towards Morgan and through an alley north of 73rd Street. (*Id.*) That chase ended at 7250 S. Morgan Street, Plaintiffs' home. (*Id.*)

At the sound of the gunshots the twins, who were wearing matching black and red jackets, had run toward home. (*Id.* ¶¶7-8.) They made their way through an alley parallel to Sangamon and Morgan Street going towards 7250 S. Morgan Street. (*Id.* ¶8.) When they arrived they noticed for the first time that officers who had been following them. (*Id.* ¶11.) Starting at 11:55:37 and ending at 11:57:29 p.m., Defendants Carroll and Obaldo were communicating over the dispatch as they pursued two males who were wearing black jackets with red writing (*i.e.*, the Mason twins). (*Id.* ¶10.) Their dispatches included the directions that the twins had run and that they ran through an alley. (*Id.*) The pursuit ended at 7250 S. Morgan Street. (*Id.*)

The OEMC records show that six additional officers joined the pursuit that ended at Plaintiffs' home with their seizure. (*Id.* ¶¶27, 29, 31, 34.) These officers are the Defendant Officers. (*Id.*) Defendants Bernal and Szubinski called into dispatch that the suspects were in custody at 11:57:40 p.m. (*Id.* ¶27.) Defendant Officers Edwards and White, beat number 4226d, also reported to dispatch that they had three suspects in custody at 11:57:48. (*Id.* ¶31.) Defendants Quinterro and Langle acknowledged that they were with Bernal and Szubnski at 7250 S. Morgan at 11:58:57 p.m. (*Id.* ¶34.)

When the twins arrived at their front porch they rang their doorbell. (*Id.* ¶9.) As they did so, the Defendants Officers charged at them with their service weapons drawn. (*Id.* ¶11.) The first officer grabbed Pierre and struck him in the back of his neck. (*Id.* ¶12.) The uniformed Defendant Officers then slammed both of the boys to the ground. (*Id.* ¶15.) When the boys'

father, Plaintiff Pete Mason, opened his front door, he found a Defendant Officer striking Pierre. (*Id.* ¶17.) Mr. Mason asked what was going on, only to have the Defendants grab and strike him. (*Id.* ¶18-19.) At some point during the beatings, while the boys were on the ground, additional officers arrived outside the Mason home. (*Id.* ¶16.)

Plaintiffs were all handcuffed and in police custody. (*Id.* ¶37.) In total, four police vehicles were on the scene. (*Id.* ¶33.) As Defendant Officers beat Pierre and Pete, Officer Belinda Bernal stood nearby with Paris. (*Id.* ¶23.) Following the beatings, some the Defendant Officers entered and searched the Mason's home. (*Id.* ¶35.) The officers were looking for a gun. (*Id.*) After the search, Plaintiffs were released and then all the Defendant Officers left. (*Id.* ¶37.) The Defendant Officers cleared the call at 1:13 and 1:14 a.m., with no arrests made. (*Id.* ¶21, 34.)

Immediately following these events, Plaintiffs called 911 regarding actions of these officers who chased Pierre and Paris to their home. (*Id.* ¶39.) The next morning, the Plaintiffs received medical treatment for their injuries. (*Id.* ¶40.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. On summary judgment, the moving party bears the initial burden of establishing that there is no genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). All facts must be construed in a light most favorable to the non-moving party (Plaintiff) and all reasonable inferences must be drawn in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

## III. ARGUMENT

Plaintiffs may not personally know the names of the officers who struck them, or may not be certain about which officers struck which blows, but other evidence places the Defendants as the involved officers. As discussed in argument below, an officer is liable for excessive force committed by another officer if he had the opportunity and ability to prevent the constitutional violation. Here, it is clear who was on the scene, and Plaintiffs are clear about what acts that the Defendant Officers committed in violating Plaintiffs' rights constitutional rights.

### A. PLAINTIFFS' FAILURE TO INTERVENE CLAIM SURVIVES SUMMARY JUDGMENT

To establish failure to intervene on both the excessive force and search claims, Plaintiffs must show that: (1) Chicago police officers violated Plaintiffs' constitutional rights, (2) Defendant Officers knew that other officers were committing or were about to commit the violation, (3) Defendants Officers had a realistic opportunity to do so something to prevent the harm from occurring, but (4) failed to take reasonable steps to prevent the harm. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

#### (1) Plaintiffs Need Not Specifically Identify the Officers That Used Excessive Force or Searched the Home So Long As Plaintiffs Prove that There Was a Constitutional Violation (Even If By Unidentified Officers)

While certainly true that Plaintiffs must prove a constitutional violation occurred, for the purposes of failure to intervene, Plaintiffs are not required to establish specifically which officer used the excessive force. *Miller v. Smith,* 220 F.3d 491 (7th Cir. 2000). Instead, Plaintiffs may present evidence showing that one or more of the Chicago police officers who came to Plaintiffs' home used excessive force and committed the illegal search and that the other (identified) officers stood by and allowed it to happen. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Defendants essentially argue that they are entitled to judgment because Plaintiffs are unable to say who threw the punches. However, to establish personal involvement Plaintiffs are not required to identify specifically who landed the blows so long as they can establish, as they do here, who was present for those blows. In other words, Defendants define personal involvement too narrowly. The Courts have found time and again that officers who stand by allowing others to commit constitutional violations are personally involved. *Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008). "[A]n official satisfies the personal responsibility requirement of Section 1983 if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry* v. *Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Smith* v. *Rowe,* 761 F.2d 360, 369 (7th Cir. 1985). In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. "*Jones* v. *City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988).

The case of *Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000), presents facts very similar to this case. The *Miller* plaintiff brought an excessive force claim against six officers, only one of whom physically abused him. The district court had dismissed the excessive force claim, finding that plaintiff could not establish the requisite personal involvement because he could not identify which of the six officers struck him. *Id.* at 495. The Seventh Circuit reversed, holding that direct participation is not required. *Id.* "[P]olice officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable." *Id.*

Likewise, in *Rodriguez v. City of Chicago,* the City argued for summary judgment because the Plaintiff failed to identify the officer who assaulted her in a photo array and was unable to "specifically attribute any of the allegations in her complaint to either [of the two

officers].” *Rodriguez v. City of Chicago*, No. 08 C 2095, 2009 WL 4787937, at *3 (N.D. Ill. Dec. 9, 2009). The court, however, rejected that argument because it was undisputed that the two defendant officers were present and involved in the seizure. *Id.* at *4.The court explained:

> Defendants admit that Wolanski and Zadura operated the squadrol that transported Plaintiff on the night in question so there is no question that they were present during the relevant events. Even if Plaintiff could not identify the threatening officer … her § 1983 claim still survives summary judgment because a reasonable factfinder could find Wolanski and Zadura liable under § 1983 for standing by and doing nothing to prevent the violation of Plaintiff's rights.

*Id.*

Here, there is no question that the Plaintiffs have established the officers who were present for the beatings and the search the residence. In fact, the evidence that the Defendant Officers were present and failed to intervene is uncontroverted.

**(2) Sufficient Evidence Establishes That The Defendant Officers Were Present and Failed to Intervene In The Constitutional Violations.**

Both Paris and Pierre Mason have positively identified Defendant Officer Belinda Bernal. (LR Stmt. ¶22.) Defendant Bernal stood by watching while the officers in her unit, all uniformed Chicago Police Officers, used violence against minors and illegally searched the Mason home. (*Id.* ¶23.) Not only do the records obtained through discovery identify Defendant Officer Bernal’s partner and her fellow Defendants as handling the event together, the factual chronology detailed above confirms that they were involved in the incident exactly as described by Pierre, Paris and Pete Mason.

Chicago Police Department dispatch records from the Office of Emergency Management Communications (OEMC) undisputedly establish that the Defendant Officers were the officers who detained Plaintiffs and searched their home. (*Id.* ¶¶10, 21, 29, 30-31, 34.) Defendant Officers Obaldo and Carroll detailed their pursuit of Plaintiffs and arrival at Plaintiffs’ home

over the dispatch. (*Id.* ¶10.) Further, unlike the other Defendants who denied any physical contact, Defendants Obaldo and Carroll stated that they could not deny that they had physical contact with Plaintiffs. (*Id.* ¶20.) Defendants Bernal and Szubski reported to dispatch at 11:57:40 p.m. that three suspects were in custody. (*Id.* ¶27.) Defendants Bernal and Szubski do not deny that they were at the location of 7250 S Morgan at 11:59 p.m. (*Id.* ¶26.) Defendant Officers Edwards and White, beat number 4226d, also reported to the dispatch at 11:57:48 p.m. that they had three persons in custody in connection with the chase by Defendants Obaldo and Carroll. (*Id.* ¶31.) Finally, the records demonstrate that Defendant Officers Quintero and Langle, beat number 0733, were at 7250 S. Morgan along with Bernal and Szubski at 11:58 p.m. (*Id.* ¶34.)[1]

All Defendant Officers took part in the chase of the males wearing black and red jackets (*i.e.*, Pierre and Paris) that ended at 7250 S. Morgan Street. They had three individuals in their custody (*i.e.*, Pierre, Paris and Pete Mason). Furthermore, the officers "cleared" the call, meaning that they were leaving 7250 S. Morgan Street, approximately fifteen minutes after their arrival. (*Id.* ¶¶21, 34.) In sum, the OEMC dispatch records actually confirm who was involved and support the sequence of events, the times and addresses of what these boys have said all along.

Furthermore, not only was Defendant Bernal on this job, but she was the only female officer at the scene and she was there for over fifteen minutes. Defendant Bernal has admitted to the validity of the OEMC records which confirm her activities and provide who else was present

[1] The dispatch records showing that beat 4226d was a block away from Morgan on Sangamon at some point during the call do not, under any standard, show that Edwards and White did not participate in the beating and ransacking. The transmission at issue could simply mean that Edwards and White first encountered Plaintiffs on Sangamon (or believed they were on Sangamon), which is between Green Street (where the twins were heading from) and Morgan (where the twins were going to), and then followed them home. They could also mean that Edwards and White were on Sangamon when they first decided to assist in the calls. What is clear, however, is that their beat is listed on two event queries describing the same incident that Plaintiffs describe. There has been <u>no</u> evidence in this case about a separate incident on Sangamon, and the transmission itself certainly does not show that. Indeed, in their depositions neither Edwards nor White could recall any such separate incident, and the other records Defendants produced are void of any such incident.

at the scene. (*Id.* ¶.) Her partner Szubnski and fellow Defendants Obaldo, Carroll, Edward, White, Bernal, Quintero, and Langle likewise were all involved in the chase and were present through the end of the illegal search.

**(3) Defendants Argument Regarding Proximity Is Not Applicable To The Facts of This Case**

As a proposition of law, Plaintiffs agree that proximity to the wrong is not sufficient to establish liability. Def. Mem. at 2-3. In contrast to the cases on which Defendants rely, however, the evidence here establishes much more than that Defendants were in proximity to the constitutional wrongs. The Defendants Officers here had the opportunity to observe the wrongs and to prevent them.

The case cited by the Defendants only highlight why the Defendants in this matter are liable for their actions. In *Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992) the plaintiff did not did not know which of the fourteen officers who executed the search warrant had stolen his property. Beause the plaintiff there did not see the theft he likewise could not establish that any of the officers knew about the theft, saw the theft, or had opportunity to prevent the theft. *Id*. Indeed, failure to intervene was not even a theory of liability raised or discussed in that case. *Id.* Defendant reliance on *Billups v. Kinsella*, 08 C 3365, 2010 WL 5110121, *3-4 (N.D. Ill. Dec. 9, 2010), proves unpersuasive for the same reasons. Likewise *Molina v. Cooper,* 325 F.3d 963, 973 (7th Cir. 2003), highlights the shortcomings in Defendants' motion for summary judgment. The *Molina* plaintiffs could not establish which officers, if any, observed any wrongdoing on the part of any other officer. *Id.* In contrast, in this case Plaintiffs can both prove which individual Defendants saw the beatings and which individual Defendants were present for the illegal search. These officers, present at the Mason home, had the opportunity to prevent the constitutional

harms, but failed to do so. Under well settled Seventh Circuit law, they may be liable for that conduct.

## B. PLAINTIFFS' EXCESSIVE FORCE CLAIM SURVIVES SUMMARY JUDGMENT

To prove their excessive force claim, Plaintiffs must establish that one or more of the Defendant Officers used unreasonable for against them. Defendants do not argue that Plaintiffs' description of the force used does not meet this standard, but instead that Plaintiffs cannot establish the personal involvement of the Defendant Officers. It is undisputed, however, that these eight officers were present for the excessive force. That evidence is sufficient for the finder of fact to consider this claim.

At trial, Plaintiffs will describe in detail what they saw during the chase, the beatings and the search and who they saw by description, uniform, vehicle, and location. Further, the OEMC dispatch records will support their testimony. The officers involved in the beatings of Plaintiffs were the same officers who chased them to the porch and handcuffed them. The dispatch records show that Defendants Obaldo and Carroll were the primary officers who chased Plaintiffs, followed quickly by Edwards and White. Therefore, sufficient evidence allows the excessive force claim against these officers to go to the jury. Plaintiffs may not personally know the names of the officers who struck them, or may not be certain about which officers struck which blows, but OEMC records place Defendants at the scene and Defendants do not deny their involvement. The totality of the evidence allows a jury to find that Defendants Carroll, Obaldo, Edwards and White personally participated in the beatings. At a minimum, Defendants Bernal, Subski, Langle and Quintero failed to intervene.

The Defendants have retreated into a uniform chorus of "I don't recall" regarding this entire event, which was reported shortly thereafter. It is the province of the jury to determine whether Defendants' memory lapses are plausible in the face of the evidence.

**C. FOR STATE LAW CLAIMS PLAINTIFF MUST PROVE THE CONDUCT WAS COMMITED BY A CHICAGO POLICE OFFICER, BUT IS NOT REQUIRED TO IDENTIFY THE PARTICULAR INDIVIDUAL**

Even if Defendants were to claim that it was some other mystery officers, and not them, at Plaintiffs' home on December 13, 2008, Defendant City of Chicago would still be liable for the state claims as long as a jury decided that the acts were in fact committed by Chicago Police Officers. Unlike with the federal claims, on the state claims, an employer is responsible for its agents under the theory of respondeat superior regardless of whether the employees are named individuals in the complaint. The case of *McCottrell v. City of Chicago*, 481 N.E.2d 1058 (Ill. App. 1985), is the leading authority interpreting the Illinois Tort Immunity Act in conjunction with the principle that a servant is not a necessary party to an action against the master under the theory of respondeat superior (in the context of a wrongful death action against unnamed City of Chicago paramedics). Judge Kendall relied on *McCottrell* in her opinion in *Vodak v. City of Chicago*, No. 03-2463, 2006 WL 1049736 (N.D. Ill. 2006), to deny defendants' summary judgment motion where state claims against additional individual defendants were time-barred. "[T]he failure to add an employee before the passing of the statute of limitations does not bar relief against the employer under the Tort Immunity Act. And while the class is time barred from pursuing many of its state law claims against almost all of the added Defendants, they may still obtain relief on their Counts of respondeat superior and indemnification from the City of Chicago if they can prove that the added Defendants would be liable and acted within the scope of their employment." *Id.* at *5. The same rational and decision was applied in *Beal v. City of*

*Chicago,* No. 04 C 2039, 2007 WL 1029364 (N.D. Ill. 2007), allowing the plaintiff's state and federal claims against the City, even though the claims against the individual officers were time-barred and the officers would not be named parties. *Id.* at *14.

The Seventh Circuit case commented on this same tenet in *Bachenski v. Malnati*, 11 F.3d 1371 (7th Cir. 1994), affirming a decision by Judge Shadur in which the action against the master-employer Flash Cab was dismissed (based on a dismissal on the merits against the employee-servant Bachenski) and applying the *Towns* doctrine. In a note, the Court stated that the *Towns* doctrine is not inconsistent with the rule, set forth in *McCottrell*, that a servant is not a necessary party to an action against the master. *Id.* at 1378, n.9. Based on the established law regarding respondeat superior liability and indemnification under the Illinois Tort Immunity Act, a police officer does not need to be named as a party in order for a plaintiff to pursue a claim against the City employer.

Thus, in this case, Plaintiffs could pursue their state claims against the City even if they could not have identified the Defendants by name. To the extent that the Defendants may imply that other officers committed these acts it may be necessary to include the claims against unknown officers in the jury instructions. Whether Defendant Officers choose to point fingers at one another or at others, or simply claim they have no knowledge whatsoever, a jury could find the City liable based on the conduct of Chicago Police Officers.

## CONCLUSION

This case is not about some undiscovered bogeyman; it is about the conduct of these Defendant Officers between 11:50 p.m. and 12:15 a.m. on December 13, 2008. Even if Plaintiffs cannot name the particular officers that struck them, it is well established that these were the Chicago police officers present. Playing an intellectual shell game in a summary judgment does

not entitle any of these officers to summary judgment. None of them can escape from the fact that there is more than enough evidence for a jury to find that at best they stood by and allowed these outrages events to occur. Therefore, summary judgment must be denied.

RESPECTFULLY SUBMITTED,

/s/ Christopher R. Smith
One of Plaintiff's Attorneys

Christopher R. Smith
Robert W. Johnson
Amanda Antholt
James Baranyk
Smith, Johnson & Antholt LLC
112 S. Sangamon Street, 3rd Floor
Chicago, IL 60607
312.432.0400

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that Plaintiffs' Response to Defendants' Motion for Summary Judgment was served on counsel for all parties by electronic means on January 24, 2011.

/s/ Christopher R. Smith